**C.L. HAUTHAWAY & SONS CORPORATION, Plaintiff,**

v.

**AMERICAN MOTORISTS INSURANCE COMPANY and American Manufacturers Mutual Insurance Co., Defendants.**

**Civ. A. No. 87–2139–H.**

United States District Court, D. Massachusetts.

May 16, 1989.

---

Don M. Kennedy, Bradford S. Gentry, Nancer Ballard, Goodwin, Procter & Hoar, Boston, Mass., for plaintiff.

Joshua T. Buchman, Mark A. Michelson, A. Hugh Scott, David L. Douglass, Choate, Hall & Stewart, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

HARRINGTON, District Judge.

This matter is before the Court on the motions of all parties for summary judgment. Jurisdiction is based on 28 U.S.C. § 1332.

### 1. PROCEDURE

This action was originally filed in state court, and removed to federal court on August 25, 1987. The complaint consists of three counts, each of which relates to a dispute over the meaning of language appearing in contracts of insurance between the plaintiff, C.L. Hauthaway & Sons Corporation ("Hauthaway"), and the defendants, American Motorists Insurance Company ("AMICO") and American Manufacturers Mutual Insurance Company ("American Manufacturers") (referred to collectively as "the Insurers"). Plaintiff has filed two motions for partial summary judgment (Docket Nos. 19 and 63), which motions in combination seek summary judgment as to the entire complaint. Defendants AMICO and American Manufacturers have each filed a cross-motion (Docket Nos. 58 and 57, respectively) seeking summary judgment as to the entire complaint.

### 2. FACTS

The facts surrounding this controversy are not, insofar as material, in dispute. Plaintiff installed a five thousand gallon storage tank at its manufacturing facility in 1977, and began using the tank to store a chemical known as toluene. Plaintiff uses toluene in the manufacture of solvents and adhesives, and had installed underground pipes by which the toluene would travel from the storage tank to one of two manufacturing locations.

In November of 1983, a release of toluene was discovered beneath the street and in the water table under and adjacent to the plaintiff's facility. Plaintiff was thereafter in regular contact with representatives of the Massachusetts Department of Environmental Quality Engineering ("DEQE"), and has expended considerable sums attempting to address the DEQE's concerns. In June of 1987, the Massachusetts Water Resources Authority ("MWRA") filed suit against the plaintiff, complaining that discharged toluene has contaminated its easement and right of way in the vicinity of plaintiff's facility.

At some point, plaintiff requested that one or both of the Insurers defend it against the DEQE and the MWRA, and indemnify it for costs incurred in response to the DEQE and as a result of the MWRA's lawsuit. The Insurers at some point refused.

### 3. DISCUSSION

The Insurers do not dispute that plaintiff carried a comprehensive general liability policy with American Manufacturers from 1973 through September 1, 1983, and with AMICO from September 1, 1983 through 1988. They contend, however, that the claims asserted by the MWRA and DEQE

do not fall within the scope of the policies' coverage. In support of their position, the Insurers note that all indications are that the toluene escaped from an underground pipe at a slow rate over a lengthy period of time. The third-party claims against Hauthaway, they argue, are therefore within the policy's pollution exclusion clause, which provides that

> [t]his insurance does not apply ...: (f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials, or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

Plaintiff does not argue that the toluene was released from the pipe at a rapid rate, or that its release was confined to a short period of time. Rather, plaintiff's contention is that the pollution exclusion does not apply because the discharge of toluene was "sudden and accidental" within the meaning of the exclusion's exception, and therefore within the scope of the policy's coverage.

Summary judgment is appropriate only when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The instant dispute is well-suited to resolution by summary judgment, for the parties are in agreement as to material facts. Two questions of law are therefore pending, both of which revolve around the meaning of the term "sudden." The first question, which is raised by both of the defendants' motions and by the first of the plaintiff's motions (Docket No. 19, based on duty to defend), is whether a trier of fact could find that the discharge of toluene was "sudden" and therefore within the scope of coverage. The second question, raised by the second of plaintiff's motions (Docket No. 63, based on duty to indemnify and on M.G.L. ch. 93A and ch. 176D), is whether a trier of fact could find that the discharge of tolu-

ene was not "sudden," and therefore not within the scope of coverage.

The plaintiff's argument is that the term "sudden" means "unforeseen," "unintended," "unexpected," "unanticipated," and the like. Plaintiff offers dictionary definitions in support of its argument, some of which define "sudden" in this manner without including a temporal aspect. Plaintiff also offers numerous cases, including the case of *Shapiro v. Public Service Mutual Ins. Co.*, 19 Mass.App. 648, 477 N.E.2d 146 (1985). *Shapiro* held that an escape of oil from a corroded underground tank was "sudden" and therefore not excluded by a pollution exclusion clause containing precisely the same wording as the instant clause. *Shapiro* does not explore the issue in great depth, but rather relies on an earlier decision of the Massachusetts Supreme Judicial Court to justify its holding that a discharge need not be a "dramatic catastrophe" (*id.* at 652, 477 N.E.2d 146) in order to be "sudden," so long as it occurs "without previous notice or with very brief notice." *Id.* at 650, 477 N.E.2d 146, *quoting New England Gas & Elec. Ass'n v. Ocean Accident & Guar. Corp.*, 330 Mass. 640, 116 N.E.2d 671 (1953).

Since the parties agree that no choice of law question is presented on these facts, the law of Massachusetts determines this substantive issue. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Plaintiff is therefore well-armed with *Shapiro*, for this Court is extremely reluctant to undercut a Massachusetts Appeals Court decision squarely on point;

> [w]hen an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.

*West v. A.T. & T. Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940). The task of this Court, then, is to determine whether any "persuasive data" indicates

that the Supreme Judicial Court would decline to adopt the holding of *Shapiro*.

A court applying Massachusetts law construes contractual language according to its ordinary and common usage. *See, e.g., Save–Mor Supermarkets, Inc. v. Skelly Detective Serv., Inc.*, 359 Mass. 221, 225–26, 268 N.E.2d 666 (1971) (Holding that the words "in attendance," appearing in an insurance contract, "are words in common use and we must give to them the meaning intended when they are used by ordinary men"); *New England Gas*, 330 Mass. at 653, 116 N.E.2d 671 ("The question is not what [contractual language] might mean to a scientist or one skilled in the subject involved, but what it means to the average man ... words ... should be given the meaning they impart in common speech"). Plaintiff is correct in asserting that the word "sudden" commonly connotes the unexpected, but it also encompasses quite clearly a temporal aspect of immediacy, abruptness, swiftness, quickness, instantaneousness, and brevity. Not only is this the meaning which common sense and common usage support, but it is also the manner in which the term has been used in the caselaw which the Supreme Judicial Court has created. *See, e.g., Joughin v. Federal Motor Transp. Co.*, 279 Mass. 408, 411, 181 N.E. 754 (1932) (Holding that the *"sudden peril"* defense is not available where there was "no need of *speedy* decision or action") (emphasis supplied); *DiBari v. J.W. Bishop Co.*, 199 Mass. 254, 257, 85 N.E. 89 (1908) (Recognizing that a jury could consider whether plaintiff should have "moved more *quickly* ... in a moment of *sudden* peril") (emphasis supplied).

The temporal aspect of the term, moreover, can not be separated out from the aspect of the term which focuses on a lack of expectation and preparation. Plaintiff is no doubt correct in its assertion that "anticipated" is the antithesis of "sudden"; so too, however, is the term "gradual," and the caselaw of the Commonwealth reflects their opposite meanings. *See, e.g., New England Gas*, 330 Mass. at 654, 116 N.E.2d 671 ("We do not agree with the auditor's inference that the cracking of the spindle was *gradual and not sudden* ") (emphasis

supplied); *Blevin's Case*, 15 Mass.App. 926, 443 N.E.2d 1368 (1983) ("The decisive factors, we think, are that (as the board could find) the onset of symptoms was *not gradual but sudden* ") (emphasis supplied). Similarly, the discharge of toluene from plaintiff's pipe was *not sudden but gradual* —it offends common sense to describe such a gradual leak as "sudden," and this Court can not strain the clear meaning of a word to reach a preconceived result.

The Court emphasizes that it does not disagree with plaintiff that "sudden" connotes the unanticipated and unforeseen. The disagreement, however, is with plaintiff's assertion that this is, or can be, the exclusive meaning of the term in some contexts. Plaintiff cites dictionary definitions which do in fact break the term down into its components, and it is true that some of these components do not expressly refer to the temporal aspect. Plaintiff argues that the term is therefore ambiguous, since it is unclear whether the term always carries with it the temporal aspect. Not only does such an interpretation run counter to common sense, plain meaning, and ordinary usage, but it also renders superfluous the term "accidental." If "sudden" refers only to the individual's subjective state of mind or capacity for forethought, it adds nothing to what the term "accidental" has already delivered; only by allowing it to retain its temporal aspect does the term attain independent significance.

It is with great reluctance that the Court takes a position on a point of Massachusetts law which is contrary to the position taken by the highest court of the Commonwealth to address the issue. A basic and common sense approach to construction, however, compels the Court to hold that no trier of fact could possibly view the discharge of toluene which occurred in this case as "sudden." The Court is not, moreover, convinced that the opinion of the Supreme Judicial Court in *New England Gas* supports the *Shapiro* holding. While *New England Gas* does refer to the definition "happening without previous notice or with very brief notice" as the "primary meaning [of the term sudden] according to the lexi-

cographers," 330 Mass. at 654, 116 N.E.2d 671, the opinion does not ignore the temporal aspect. On the contrary, the court expressly examines the temporal aspects and concludes that the rupture of the turbine was of a sufficiently brief and abrupt nature that it could be characterized as "sudden":

> The turbine had become violently rough at 1:15 P.M. and so continued until it was shut down about an hour and fifteen minutes later. It would be hard to infer that the spindle, at least during this last mentioned period, was merely undergoing only slow and gradual structural changes, especially in view of its condition as shown by the subsequent examination. We do not agree with the auditor's inference that the cracking of the spindle was gradual and not sudden.

330 Mass. at 654, 116 N.E.2d 671. In short, common usage and *New England Gas* lead this Court to conclude that the Supreme Judicial Court would not view a slow and gradual discharge of toluene at plaintiff's facility as "sudden." To coin a cliché, "sudden" means "sudden" and not "gradual."

For the foregoing reasons, plaintiff's motion for partial summary judgment (Docket No. 18) and plaintiff's motion for summary judgment on defendants' duty to indemnify and Chapter 93A (Docket No. 63) are DENIED; defendant American Manufacturers' cross-motion for summary judgment (Docket No. 57) and defendant AMICO's cross-motion for summary judgment (Docket No. 58) are

GRANTED.