HUDSON INSURANCE COMPANY, a Delaware Corporation, Plaintiff,

v.

DOUBLE D MANAGEMENT COMPANY, INC., a Florida corporation, Double D Properties, Inc., a Florida corporation, and Constitution State Insurance Company, a Connecticut corporation, Defendants.

No. 89–1631–CIV–T–17B.

United States District Court, M.D. Florida, Tampa Division.

June 28, 1991.

Steven C. Davis, Jonathan L. Alpert, Peter J. Grilli, Wendy England, Alpert, Josey & Grilli, P.A., Tampa, Fla., for Hudson Ins. Co.

Katherine S. Dedrick, Jeffrey A. Siderius, John E. Herndon, Ronald L. Kammer, Hinshaw & Culbertson, Miami, Fla., for Constitution State Ins. Co.

Arnold L. Berman, West Palm Beach, Fla., for Double D Management Co., Inc. and Double D Properties, Inc.

## ORDER

KOVACHEVICH, District Judge.

This cause is before the Court on Count II of Plaintiff's petition for declaratory relief. Before the Court are Plaintiff's first and second motions for summary judgment against Double D Management Co., Inc., and Double D Properties, Inc. ("Double D"), Defendant Double D's motions for summary judgment on "Damages," "Crop Dusting," and the "Pollution Exclusion," and Defendant Double D's motion for partial summary judgment on Hudson's duty to defend.

The central question is whether Defendant Double D's insurance policies with Hudson provide coverage for the Defendants against a claim for contribution and indemnity in an underlying third party action for CERCLA, 42 U.S.C. § 9606 *et seq*, response and clean-up costs.

## I. JURISDICTION

Having decided the threshold issue of whether federal or state law applies to this action and ruled that state law applies, 768 F.Supp. 1538, this Court retains diversity jurisdiction over this case under 28 U.S.C. § 1332.

## II. FACTUAL BACKGROUND

Double D manages certain agricultural property in West Palm Beach County, Florida. On various occasions and in connection with its management duties, Double D contracted with one of Juan Montalvo's companies, known as CHEMAIRSPRAY, to provide for the aerial application of insecticides, pesticides, and/or herbicides on Double D's property (Amended Third Party Complaint at paragraphs 2, 19, 20, Dkt. 91, Exhibit 1). In so doing, CHEMAIRSPRAY employees routinely loaded aircraft with the desired chemicals, applied those chemicals to the managed property via aerial application and, upon returning to the CHEMAIRSPRAY site, rinsed the aircraft's tanks of any remaining chemical residue (Dkt. 91, Exhibit 1). The resulting rinseate flowed off the CHEMAIRSPRAY runway and eventually into the ground nearby (Complaint, *Southwest Florida Water Management District v. Montalvo*, Case No. 88–8038–Civ–Davis (S.D.Fla., Dkt. 91, Exhibit 2). This caused pollution at the CHEMAIRSPRAY site and threatened nearby property (*See* Order Determining Liability Among Parties, entered February 15, 1989, Dkt. 91, Exhibit 3).

Two nearby property owners, Southwest Florida Water Management District and New Farm, sued Juan Montalvo and CHEMAIRSPRAY (the "Montalvo Group") seeking recovery under CERCLA, 42 U.S.C. § 9601 *et seq.*, for the cost of investigation and cleanup of the polluted CHEMAIRSPRAY site. The Montalvo Group was found liable in the case of *South Florida Water Management District v. Montalvo*, Case No. 88–8038–Civ–Davis (S.D.Fla. Nov. 7, 1988), for the damage caused, including the assessment and cleanup of the site. Thereafter, the Montalvo Group filed an amended third party complaint seeking contribution and indemnity from Double D and other farms that had used the aerial spraying service for the liability assessed against them for response costs at the CHEMAIRSPRAY site.

In response to the Montalvo Group's third party action against Double D, Double D contacted both its primary liability carrier and its umbrella carrier, Hudson Insurance Company, requesting a defense against the Montalvo Group's third party action. Plaintiff Hudson then filed a declaratory judgment action to resolve whether Hudson and/or Constitution State owe a duty to defend and/or indemnify Double D in the underlying action.

### Pertinent Policy Provisions

Hudson issued two commercial umbrella liability policies to Double D, No. HA–01604 and HN–01646, covering the period from September 30, 1983 to October 1, 1985. The policies are "umbrella" policies which obligate Hudson to indemnify Double D for "all sums which the Insured shall be legally obligated to pay as ultimate net loss" as a result of personal injury property damages, and advertising liability caused by an "occurrence" during the policy period. "Ultimate net loss" is defined under the policies as "the sum actually expended or payable in cash to procure settlement or satisfaction of the Insured's legal obligation for damages...." "Occurrence" is defined by the policy as "an accident, or a happening or event, or continuous or repeated exposure to conditions, which unexpectedly or unintentionally results in [damage]."

However, the policies contain various exclusionary clauses, two of which are pertinent to the outcome of this litigation. The policies each include a pollution exclusion clause stating that the policy does not apply:

to personal injury or property damages arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes ... into or upon the land, the atmosphere or any water course or body of water; but this exclusion does not

apply if such discharge, dispersal, release or escape is sudden and accidental.

Additionally, both policies include crop dusting exclusions. Policy No. HN–01646 states:

> In consideration of the premium paid, and notwithstanding anything contained in this policy to the contrary, it is agreed that this policy shall not apply to personal injury or property damages arising out of the operation of an aircraft by or on behalf of the Insured for the purposes of dusting and spraying operations.

The exclusions as noted above are most important to resolution of the issue of coverage in this case.

## III. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Rule 56(c) Fed.R.Civ.P. The Supreme Court of the United States held, in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986):

> In our view the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial.

477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273.

### *Burden of Proof*

■■■ An insured has the burden of proving that the claim against it is covered by the insurance policy. *Gilman v. U.S. Fidelity & Guar. Co.*, 517 So.2d 97 (Fla. 1st DCA 1987); *Melville v. American Home Assurance Co.*, 584 F.2d 1306, 1308 (3d Cir.1978); *Fischer v. Porter v. Liberty Mutual Ins. Co.*, 656 F.Supp. 132, 140 (E.D.Pa.1986). The burden of proving an exception to coverage is on the insurer. 656 F.Supp. at 140. However, the courts are split as to whether the insurer or insured has the burden of proving an *exception* to an *exclusion*. The one court which has considered the "sudden and accidental" exception to a "pollution exclusion" clause held that the insured had the burden of proving that the "sudden and accidental" exception applied. *Fischer v. Porter, supra*, 656 F.Supp. at 140; *see also Fireman's Fund Ins. Co. v. Ex–Cell–O–Corp.*, 702 F.Supp. 1317, 1328 (E.D.Mich.1988) (adopting the *Fischer* court's ruling on the burden of proving "sudden and accidental" exception). Accordingly, this Court finds that as to the "sudden and accidental" exception to the "pollution exclusion" the burden of proof is upon Double D to prove that the "sudden and accidental" exception applies; as to the "crop dusting" exclusion, the burden of proof falls upon Hudson to prove that the exclusion applies.

## IV. DISCUSSION

■■■ The issues urged by the Plaintiff in seeking summary judgment are issues of law and contract interpretation. Whether the Plaintiff must defend and indemnify Defendants turns on one or more of the following issues: (a) whether the clean-up and investigation costs for the CHEMAIRSPRAY site constitute "damages" under the policies; (b) whether the Defendant's claim for coverage is precluded by the pollution exclusion clause or falls within the "sudden and accidental" exception under which the policy must pay; (c) whether the "crop dusting" exclusions of the policies preclude coverage. The strongest arguments concern the exclusionary provisions. However, this Court notes that clean-up costs qualify as damages under the policies. *AIU Ins. Co. v. FMC Corp.*, 51 Cal.3d 807, 274 Cal.Rptr. 820, 799 P.2d 1253 (1990).

As the Court in *AIU* points out, numerous state and federal courts have addressed the issue of whether clean-up costs under environmental statutes constitute "damages" within insurance policy coverage. Nearly every state appellate decision has concluded that clean-up costs incurred under environmental statutes are covered by policies identical to those at issue in this case. *See, e.g., Aerojet–General Corp. v. Superior Court*, 211 Cal.App.3d 216, 257

Cal.Rptr. 621 (1989); *C.D. Spangler Construction Co. v. Industrial Crankshaft & Engineering Co., Inc.,* 326 N.C. 133, 388 S.E.2d 557 (1990); *Compass Ins. Co. v. Cravens, Dargan & Co.,* 748 P.2d 724 (Wyo.1988); *United States Fidelity & Guar. Co. v. Specialty Coatings Co.,* 180 Ill.App.3d 378, 129 Ill.Dec. 306, 535 N.E.2d 1071, *app. denied* 127 Ill.2d 643, 136 Ill. Dec. 609, 545 N.E.2d 133 (1989); *Upjohn Co. v. New Hampshire Ins. Co.,* 178 Mich. App. 706, 444 N.W.2d 813 (Mich.App.1989); *CPS Chemical Co., Inc. v. Continental Ins. Co.,* 222 N.J.Super. 175, 536 A.2d 311 (1988); *Cf., Braswell v. United States Fidelity & Guar. Co.,* 300 S.C. 338, 387 S.E.2d 707 (S.C.App.1989).

However, federal courts, purportedly applying state law, are sharply divided on whether environmental clean-up costs are covered by insurance policies covering "damages."[1] Courts relying on decisions holding that an insured's costs of complying with mandatory injunctions issued in suits asserting common law claims are not "damages," (*see, e.g., Garden Sanctuary Inc. v. Insurance Co. of N. America,* 292 So.2d 75 (Fla. 2d DCA 1974); *Aetna Casualty & Sur. Co. v. Hanna,* 224 F.2d 499 (5th Cir.1955), have held that the costs of compliance with environmental injunctions should be treated no differently. *See, e.g., Continental Ins. Companies v. Northeastern Pharmaceutical,* 842 F.2d 977 (8th Cir. 1988); *Maryland Cas. Co. v. Armco, Inc.,* 822 F.2d 1348, *cert. denied,* 484 U.S. 1008, 108 S.Ct. 703, 98 L.Ed.2d 654 (4th Cir.1987).

This is essentially the argument put forth by the Plaintiff in this case. Relying primarily on *Garden Sanctuary, supra,* as state law precedent, Plaintiff argues that CERCLA clean-up costs are equitable in nature and thus are not legal "damages" covered under the policies. However, *Gar-*

*den Sanctuary* does not address the issue of whether clean-up costs under CERCLA or any other environmental statute are "damages." Accordingly, this Court finds that *Garden Sanctuary* is not binding precedent on this issue. Thus, the Court rejects Plaintiff's argument, and follows the great majority of state court decisions in holding that clean-up costs under CERCLA and other environmental statutes are covered "damages" under the Hudson policies in this case.

Having determined that the clean-up costs sought from Defendants in the underlying action are damages under the policy, the Court shall consider Plaintiff's argument that the two exclusionary provisions contained in the policies preclude coverage.

*The "Pollution Exclusion" Clause*

■ Defendants contend that the pollution exclusion clause in the Hudson policies is ambiguous and that under Florida law such ambiguity must be construed in favor of coverage for the insured. *Triano v. State Farm Mutual Auto Ins. Co.,* 565 So.2d 748, 749 (Fla. 3d DCA 1990). To support this argument, Defendants rely on dictionary definitions, purported drafting history, and on several decisions from other jurisdictions and Florida which have found such clauses to be ambiguous and accordingly have held in favor of coverage for the insured. *See, e.g., Pepper's Steel & Alloys, Inc. v. United States Fidelity & Guar. Co.,* 668 F.Supp. 1541 (S.D.Fla.1987); *Payne v. U.S. Fidelity & Guar. Co.,* 625 F.Supp. 1189; *Claussen v. Aetna Cas. & Sur. Co.,* 259 Ga. 333, 380 S.E.2d 686 (1989); *Just v. Land Reclamation, Ltd.,* 155 Wis.2d 737, 456 N.W.2d 570 (1990); *Cf. Hayes v. Maryland Casualty Co.,* 688 F.Supp. 1513, 1515 (N.D.Fla.1988) (disagreeing with the interpretation of the pol-

---

1. *See, e.g., Avondale Industries, Inc. v. Travelers Indem. Co.,* 887 F.2d 1200 (2d Cir.1989) (reimbursement of response costs are "damages"); *National Indem. Co. v. U.S. Pollution Control Inc.,* 717 F.Supp. 765 (W.D.Okla.1989); *Chesapeake Utilities Corp. v. American Home Assur. Co.,* 704 F.Supp. 551 (D.Del.1988); *U.S. Conservation Chemical Co.,* 653 F.Supp. 152 (W.D.Mo. 1986); *New Castle County v. Hartford Accident & Indem. Co.,* 673 F.Supp. 1359 (D.Del.1987);

*Cf., e.g. Mraz v. Canadian Universal Ins. Co., Ltd.,* 804 F.2d 1325 (4th Cir.1986); *Verlan, Ltd. v. John L. Armitage & Co.,* 695 F.Supp. 950, 954 (N.D.Ill.1988); *Travelers Ins. Co. v. Ross Elec. of Washington, Inc.,* 685 F.Supp. 742, 744 (W.D.Wash.1988); *Aetna Cas. & Surety v. Gulf Resources & Chem. Corp.,* 709 F.Supp. 958, 962 (D.Idaho 1989); *Hayes v. Maryland Casualty Co.,* 688 F.Supp. 1513, 1515 (N.D.Fla.1988).

lution exclusion in *Payne* and *Pepper's* and granting summary judgment to insurer). These cases have ruled that the "sudden and accidental" exception for the release and discharge of pollutants should be interpreted to mean pollution damage that is "unexpected and unintended" from the perspective of the insured. *E.G., Just v. Land Reclamation, Ltd., supra.*

Plaintiff maintains that the pollution exclusions clause is not ambiguous. Plaintiff argues that the clause precludes coverage for all pollution except when the discharge or dispersal of the pollutant occurs abruptly, instantaneously, and accidentally. *See, e.g., C.L. Hauthaway & Sons v. American Motorists Ins. Co.*, 712 F.Supp. 265, 268 (D.Mass.1989). Accordingly, Plaintiff concludes that it has no duty to defend or indemnify Defendants because the pollution at the CHEMAIRSPRAY site occurred regularly as part of the Montalvo Group's regular business activities for over a decade.

The Middle District of Florida has visited this issue recently in *Industrial Indemnity Ins. Co. v. Crown Auto Dealerships, Inc.*, 731 F.Supp. 1517 (M.D.Fla.1990). In *Industrial Indemnity*, the insureds were a group of auto dealerships that had sold used crankcase oil to a recycling company. The Environmental Protection Agency ("EPA") determined that the oil recycling process had resulted in extensive soil and ground-water pollution around the plant site. Acting under CERCLA, the EPA imposed administrative liability, not only on the polluters, but on the insured auto dealerships who had sold the pollutants to the polluters. *Id.* at 1518. The pollution exclusion contained in the policy at issue in *Industrial Indemnity* was identical to the one at issue in the present case.

The Honorable William Terrell Hodges, United States District Judge, in reviewing issues nearly identical to those raised in this case, held that "sudden has a temporal meaning to it as well as a sense of the unexpected." 731 F.Supp. at 1520 (*citing C.L. Hauthaway & Sons v. American Motorists Ins.*, 712 F.Supp. 265, 268 (D.Mass. 1989) (ordinary and common usage of term "sudden" includes temporal aspect of immediacy, abruptness, swiftness and quickness as well as unexpected)). The Court then found that "sudden" meant "pollution which occurs abruptly, instantly, or within a very short period of time," and "accident" meant an event which is "unexpected or unintended and does not take place within the usual course." 731 F.Supp. at 1520.

Applying these definitions to the pollution that occurred in that case, Judge Hodges concluded that the pollution occurred gradually, over a long period of time, and as a normal result of the recycling plant's business operations. *Id.* Thus, the Court ruled the pollution was not "sudden or accidental" as a matter of law, despite the fact that it may have been unintended.

This Court agrees with the analysis of Judge Hodges in *Industrial Indemnity*. Additionally, the doctrines of intra-court comity and *stare decisis* mandate that this Court rule in a similar fashion. As the Court in *United States v. Anaya*, 509 F.Supp. 289, 293 (S.D.Fla.1980) held:

[I]mplicit in our desire for uniformity is our disinclination to depart from the doctrine of intra-court comity. The well-recognized doctrine establishes a general rule that, absent unusual or exceptional circumstances, judges of coordinate jurisdictions should follow brethren judges' rulings (citations omitted).

Further, the doctrine of *stare decisis* mandates that like facts receive like treatment in a court of law. This Court may not disregard *Industrial Indemnity* absent an intervening U.S. Supreme Court or *en banc* Eleventh Circuit Decision to the contrary. *Flowers v. United States*, 764 F.2d 759, 761 (11th Cir.1985).[2]

Moreover, numerous state and federal courts in other jurisdictions agree with

---

2. *Industrial Indemnity* is the first Court in the Middle District of Florida to address the "sudden and accidental" exception in a pollution exclusion clause. No Eleventh Circuit nor Supreme Court decision applying Florida law exists on this issue. The only Eleventh Circuit case to discuss the exclusion applied Georgia law. *Claussen v. Aetna Cas. & Surety Co.*, 259 Ga. 333, 380 S.E.2d 686 (1989) (conforming

**1548**

Judge Hodges' reasoning. *See A. Johnson & Co., Inc. v. Aetna Cas. & Sur. Co.,* 741 F.Supp. 298 (D.Mass.1990) (the Massachusetts Court applying Maine law held that the pollution exclusion was unambiguous and excluded coverage for pollution over an extended period of time); *see also Lumberman's Mutual Cas. Co. v. Belleville Indus., Inc.,* 407 Mass. 675, 555 N.E.2d 568, 572 (1990); *Bentz v. Mutual Fire, Marine and Inland Ins. Co.,* 83 Md.App. 524, 575 A.2d 795 (1990) (holding that there is nothing intrinsically unclear about the terms "sudden and accidental"); *Grant Southern Iron & Metal Co. v. CNA Ins. Co.,* 905 F.2d 954 (6th Cir.1990) (holding that the phrase "sudden and accidental" has a temporal component and does not describe continuous and ongoing pollution events); *EAD Metallurgical, Inc. v. Aetna Cas. & Sur. Co.,* 905 F.2d 8 (2d Cir.1990) (affirming summary judgment in favor of the insurers where the insured was alleged to have continuously polluted); *Centennial Ins. Co. v. Lumbermens Mut. Cas. Co.,* 677 F.Supp. 342, 348 (E.E.P.A.1987) (holding that a discharge continuously or even sporadically over a period of time cannot be considered "sudden" within the meaning of the pollution exclusion); *U.S. Fidelity and Guar. v. Star Fire Coals, Inc.,* 856 F.2d 31, 34 (6th Cir.1988) (holding that the phrase "sudden and accidental" is not a synonym for "unexpected and unintended" and that the discharge of coal dust over an eight year period was not "sudden").

Applying the definition of "sudden and accidental" established in the aforementioned cases, the Court finds that the pollution that occurred at the CHEMAIRSPRAY site was gradual, continued over a long period of time, and was a normal result of the Montalvo Group's regular business practice. Such pollution cannot be considered "sudden and accidental", and the pollution exclusion therefore precludes coverage for damages resulting from pollution at the CHEMAIRSPRAY site.

### "Crop Dusting" Exclusions

■ While the Court's finding that the pollution exclusion bars coverage for damages from pollution at the CHEMAIRSPRAY site renders any of Defendant's other arguments for coverage moot, the Court shall briefly address the issue of whether the "Crop Dusting" exclusions contained in the Hudson policies also preclude coverage.

Settled Florida law upholds crop dusting and crop spraying exclusions as unambiguous exclusions from general liability insurance coverage. In *Federal Insurance Co. v. McNichols,* 77 So.2d 454 (Fla.1955), the Florida Supreme Court construed a similar crop dusting exclusion to those at issue in this case. In *Federal Insurance,* the crop duster sprayed a solution of DDT in furtherance of Hillsborough County's mosquito control programs, but the crop duster mistakenly polluted areas beyond those designated by the county, killing a claimant's tropical fish. The Florida Supreme Court, finding the language in the policy to be sufficiently plain and unambiguous, held that the loss was encompassed by the "crop dusting" exclusion and thus was not covered by the policy. 77 So.2d at 455.

Defendants argue that the crop dusting exclusions contained in the Hudson policies do not apply because the Montalvo Group used the "spraying" of liquids, not "dusting." Double D argues that the word "dust" is ambiguous since the 1984–1985 policy employs the phrase "crop dusting" while the 1983–1984 policy uses the phrase "dusting and spraying." This argument is without merit. It is a well-settled principle in Florida that:

the language in an insurance contract should be read in the light of the skill and experience of ordinary people, and resort should not be made to uncommon meanings nor contextual distortions.

*Morrison Assurance Co. v. School Bd. of Suwannee County,* 414 So.2d 581 (Fla. 1st DCA 1982). When a policy provision remains undefined, common everyday usage determines its meaning. *Security Ins. Co. of Hartford v. Commercial Credit Equip. Corp.,* 399 So.2d 31, 34 (Fla. 3d DCA 1981);

opinion by the Eleventh Circuit at 888 F.2d 747 (11th Cir.1989)).

see also *Hess v. Liberty Mut. Ins. Co.*, 458 So.2d 71, 72 (Fla. 3d DCA 1984); *Southeastern Fire Ins. Co. v. Lehrman*, 443 So.2d 408, 409 (Fla. 4th DCA 1984). Webster's *New World Dictionary*, 2d ed. 1970, defines "crop dusting" as "the process of spraying growing crops with pesticides from an airplane."

The "crop dusting" exclusions in the Hudson policies, as well as the pollution exclusions, unambiguously exclude the activities alleged against Defendant Double D in the underlying action. Under both the pollution exclusion and the crop dusting exclusions contained in the Hudson policies, Plaintiff Hudson is not obligated to defend or indemnify Defendant Double D in the underlying third party action against Double D. Accordingly, it is

ORDERED that Plaintiff's alternative motion for summary judgment based on the "crop dusting" exclusion and the pollution exclusion is granted, and Defendant's motion for summary judgment is denied. The Clerk of Court is directed to enter a judgment in favor of Hudson on Hudson's complaint and against Double D with respect to Double D's counterclaim, in accordance with this Order.

DONE and ORDERED.