# NORTH CENTRAL PUBLIC SERVICE CO. v. VILLAGE OF CIRCLE PINES AND OTHERS. VILLAGE OF LINO LAKES v. SAME.

224 N. W. 2d 741.

November 1, 1974—No. 44049.

*Fred Burstein* and *Gregg M. Corwin,* for appellants.

*Babcock, Locher, Neilson & Mannella, Landol J. Locher,* and *John M. Burke,* for respondent village.

*Maun, Hazel, Green, Hayes, Simon & Aretz, Jerome B. Simon,* and *Charles Bans,* for respondent North Central Public Service Co.

Heard before Knutson, C. J., and Kelly, MacLaughlin, and Mulally, JJ., and considered and decided by the court en banc.

KELLY, JUSTICE.

This appeal arises out of two actions, one by North Central Public Service Co. (North Central) against the village of Circle Pines and its utilities commission (both hereafter Circle Pines) and Molin Concrete Products Co. (Molin), and the other by the village of Lino Lakes (Lino Lakes) against the same defendants. In each action a summary judgment was granted permanently enjoining Circle Pines (1) from selling gas to Molin as long as Lino Lakes withheld its consent, and (2) from including with its costs of service to consumers within Lino Lakes expenses of the Molin line, expenses of the lawsuit, and expenses involving other proceedings upon a similar claim of right. In each case, Circle Pines and its utilities commission appeal from that judgment. We affirm as to the first element of the injunctive relief granted and reverse as to the second element.[1]

In 1961, Lino Lakes granted to Circle Pines a nonexclusive franchise for the distribution of gas to consumers in the village.

---

[1] Molin has agreed to abide by the ultimate decision in these cases and is taking no part in this appeal.

Section 2 of the franchise ordinance, Ordinance No. 28, requires that Circle Pines—

"* * * file with the Village of Lino Lakes a map or plat showing the full extent of the lines to be constructed within the Village of Lino Lakes. The location of the lines shown on the said map or plat and additions or extensions thereto shall be subject to the express consent of the Council of the Village of Lino Lakes."

Section 4 of the franchise requires that defendant Circle Pines shall first obtain approval of Lino Lakes prior to laying or relaying any gas mains.[2]

In 1966, Lino Lakes granted to North Central a nonexclusive franchise for the distribution of gas to consumers in the village excepting those within a specified portion of the village, the boundaries of which correspond to the area shown on the plat filed by Circle Pines pursuant to section 2 of its franchise quoted above.

In 1966, pursuant to its franchise, North Central constructed and has since maintained a 3-inch gas line running along the north side of Lilac Street within that portion of the village of Lino Lakes included within its franchise. In 1971, defendant Molin built a new plant in that same portion of the village, on the north side of Lilac Street. North Central then constructed a 2-inch gas line into the plant from its aforementioned 3-inch line alongside Lilac Street and was prepared to provide gas service to Molin.

Circle Pines, without requesting or obtaining the consent of Lino Lakes, constructed a 3-inch gas line from its existing gas

---

[2] Section 4 of Ordinance No. 28 states: "The Grantee, prior to laying or relaying of any mains under this franchise, shall present to the Council a complete plat showing the location, size and estimated cost of all proposed mains. The Grantee, before laying or relaying any mains, shall obtain approval from the Village or its agents, in the exercise of reasonable discretion by them. Failure of the Village to insist upon this provision shall not be deemed a waiver thereof."

distribution system to Lilac Street, and along the south side of Lilac Street parallel to North Central's line on the north side of the street, to a point opposite Molin's property. From that point a 2-inch line was run across Lilac Street to Molin's plant. These lines were constructed pursuant to a contract for gas service entered into by Circle Pines and Molin on March 31, 1971.

The Lino Lakes village council thereafter adopted a resolution disapproving the action of Circle Pines in the extension of its lines to service Molin and requesting Circle Pines not to furnish gas service to Molin. The village council further resolved that Circle Pines was in violation of its franchise in failing to request and obtain the consent of the council before installing the gas line to Molin.

In October and November 1971, Lino Lakes and North Central commenced separate actions requesting injunctive relief to prevent Circle Pines from servicing Molin, from extending its gas distribution system into North Central's franchise area, and from including with its costs of service to its Lino Lakes consumers the expenses incurred as the result of the extension of its gas distribution system into North Central's franchise area.

After plaintiffs' motions for a temporary injunction were denied, plaintiffs each moved for summary judgment. The motions were granted and summary judgments including a permanent injunction were entered. In each action defendants appeal, requesting that this court reverse the summary judgment and remand the case for a trial on the merits, and also dissolve the permanent injunction pending the outcome.

Issues on the appeals are: (1) Did the trial court err in granting summary judgment ordering Circle Pines to refrain from selling gas to Molin as long as Lino Lakes withheld its consent, and (2) did the trial court err in enjoining Circle Pines from including in its charges to Lino Lakes consumers any costs relative to its extension of its gas system to defendant Molin?

1. Summary judgment is properly rendered only where there is no genuine issue of material fact and where a determination

of the applicable law will resolve the controversy. Rule 56.03, Rules of Civil Procedure; Abdallah, Inc. v. Martin, 242 Minn. 416, 65 N. W. 2d 641 (1954). Accordingly, the function of this court on review is to examine the record with two fundamental questions in view: (1) Whether there were any material issues of fact to be determined, and (2) whether the court erred in its application of the law. Minneapolis, St. P. & S. S. M. R. Co. v. St. Paul Mercury-Ind. Co. 268 Minn. 390, 129 N. W. 2d 777 (1964).

The defendants contend as to the first issue that the trial court should not have granted a summary judgment because the meanings of the words "additions or extensions" and "mains," as those words were used in sections 2 and 4 of the franchise granted to Circle Pines, were in dispute.

There is no dispute as to the physical facts. The gas line constructed by Circle Pines to the Molin plant consisted of about 1,250 feet of a 3-inch line that was attached at the northerly termination point of Circle Pines' then existing gas distribution system in Lino Lakes. The new 3-inch line was then connected to a 2-inch line running across Lilac Street and onto the Molin property. These new lines were not shown on the map filed pursuant to section 2 of the gas franchise given to Circle Pines. It is conceded that the 3-inch line has a capacity for use as a main or feeder line for the servicing of other customers in addition to Molin. It also appears that these new gas lines built to serve Molin proceeded over and lead to an area that is not even shown on the franchise map which Circle Pines was required to file with Lino Lakes pursuant to section 2 of the franchise ordinance. Furthermore, the tract of land where the Molin plant is located does not appear on this map.

Plaintiffs contend that the language in the franchise is plain and unambiguous and that the court was entitled to interpret it as a matter of law without resort to extrinsic evidence. The function of this court in an appeal of this type was stated in Employers Lia. Assur. Corp. v. Morse, 261 Minn. 259, 263, 111

N. W. 2d 620, 624 (1961), and favorably quoted in The Telex Corp. v. Data Products Corp. 271 Minn. 288, 291, 135 N. W. 2d 681, 684 (1965):

"Whether a contract is ambiguous or not and therefore open to construction presents, in the first instance, a question for legal determination by the trial court. The trial court in this case determined that the contract was not ambiguous * * *. On appeal, it is for us to determine whether the trial court was correct in holding that there was no ambiguity and also whether the proper interpretation was given to the language used by the parties."

Here the trial court found no ambiguity in the language of the franchise agreement, as shown by its memorandum:

"The franchise expressly provides that the consent of the Lino Lakes Village Council is required for any addition and extension of the Circle Pines gas distribution system. The Circle Pines contention that the gas line constructed by it was not an addition and extension of its gas distribution system is in conflict with the plain and clear meaning of the words 'addition and extension' used in the franchise."

The trial court in its memorandum also found that the 3-inch line has the capacity of a "main."

We hold that the trial court was correct in holding that there was no ambiguity and that it gave the proper interpretation to the language used by the parties. The pipelines constructed by Circle Pines were additions and extensions of the Circle Pines gas distribution system requiring the consent of Lino Lakes, and the trial court did not err in permanently enjoining Circle Pines from selling or otherwise furnishing natural gas service to Molin.

Circle Pines also contends that the trial court erred as a matter of law in granting summary judgment because Circle Pines as a prior franchisee has vested rights of a contractual nature which could not be impaired by Lino Lakes. The fact is that Circle Pines was not given an exclusive franchise and the non-exclusive franchise granted to it was limited to the area and ter-

ritory shown on the map it was required to file with Lino Lakes under section 2, Ordinance No. 28. Thus, its rights under the franchise as granted were in no way impaired by Lino Lakes or the decision of the trial court enjoining the furnishing of gas to Molin.

Another contention of Circle Pines is that the franchise granted to North Central was an exclusive franchise in violation of Minnesota law. This argument is based upon the assumption that Circle Pines was forever barred from serving customers outside its original grant of territory. The trial court's injunction, while of a permanent nature, was conditioned upon whether or not the consent of Lino Lakes was obtained. Nor is there any provision in North Central's franchise or the trial court's decision that precludes Lino Lakes from granting franchises to others. Thus we regard this contention as without merit.

2. We reverse the trial court as to the second element involved in the permanent injunction principally because a ruling which would preclude Circle Pines from charging Lino Lakes consumers with costs and related expenses in extending its gas line to the Molin plant is premature. Section 3 of Lino Lakes Ordinance No. 29, amending Ordinance No. 28, stated in part:

"* * * The rates to be charged by the Grantee for gas or gas service hereunder, and the standard of service shall be such as may be fixed from time to time by the Grantee and the Village of Lino Lakes, or such rate making body as may hereinafter be established under the laws of the State of Minnesota and given jurisdiction thereof, provided that the rates to be charged by the Grantee hereunder are to be reasonable, and shall at all times be such as will yield to it a reasonable return from its property used and useful in the furnishing of gas."

There is no showing in this case that the rates to be charged by Circle Pines will take into account expenses related to the Molin line or that even if it did so, the result thereof would be to violate the standards for the rates to be charged. Even if these

expenses are included in futuro, the rates may be reasonable and yield a reasonable return from the property used and useful in the furnishing of gas. Furthermore, the practical effect of this part of the injunction is to establish the rates which defendants may charge its customers. This is a legislative function which should not be usurped by the courts. City of Duluth v. Railroad and Warehouse Comm. 167 Minn. 311, 209 N. W. 10 (1926). Nor do we know what "rate making body" may "be established under the laws of the State of Minnesota and given jurisdiction thereof" at the time the rates to be charged are questioned.

As stated in AMF Pinspotters, Inc. v. Harkins Bowling, Inc. 260 Minn. 499, 504, 110 N. W. 2d 348, 351 (1961):

"Injunctive relief should be awarded only in clear cases, reasonably free from doubt, and when necessary to prevent great and irreparable injury. The burden of proof rests upon the complainant to establish the material allegations entitling him to relief. 28 Am. Jur., Injunctions, § 25."

In the instant case it was not shown that Lino Lakes had no adequate remedy at law.

We conclude as to the second element that injunctive relief was premature. This holding is without prejudice to Circle Pines' right to raise the same issue in an appropriate case or hearing involving the rates to be charged Lino Lakes consumers by Circle Pines.

Affirmed in part and reversed in part with directions that the portion of the injunction preventing defendant village of Circle Pines from charging consumers within the village of Lino Lakes with costs related to the extension of its lines to Molin's plant be dissolved.

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.