**GRINNELL MUTUAL REINSURANCE COMPANY, Appellant,**

v.

**Lowell WASMUTH, et al., Respondents,**

**CIBA–GEIGY Corporation, et al., Defendants,**

**Edwin Carlson, d/b/a Eddie's Insulation, Respondent.**

**No. C1–88–1014.**

Court of Appeals of Minnesota.

Dec. 13, 1988.

Review Denied Feb. 10, 1989.

Kay Nord Hunt, V. Owen Nelson, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for appellant.

David S. Maring, Cahill & Maring, P.A., Fargo, for Lowell Wasmuth, et al.

Duane A. Lillehaug Dosland, Dosland, Nordhougen, Lillehaug & Johnson, P.A. American Bank & Trust Bldg. P.O. Box 100 Moorhead, for Edwin Carlson.

John B. Gordon, Faegre & Benson, Minneapolis, Thomas W. Brunner, John W. Cavilia, Robert R. Lawrence, Wiley, Rein & Fielding, Washington, D.C., for amicus curiae Ins. Environmental Litigation Ass'n.

Thomas J. Barrett, Thomas J. Radio, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, John E. Hintz, Michael K. Hammaker, Washington, D.C., for amici curiae Honeywell, Inc. and Minnesota Min. and Mfg. Co.

Heard, considered and decided by CRIPPEN, P.J., and FORSBERG and LOMMEN, JJ.*

## OPINION

CRIPPEN, Judge.

Grinnell Mutual brought a declaratory judgment seeking a determination that the "pollution" exclusion in liability insurance policies issued to Edwin Carlson's business precluded coverage for alleged damage to a home and its occupants caused by formaldehyde unexpectedly emitted from deteriorating foam insulation Carlson sold and installed.

The trial court denied Grinnell's summary judgment motion and granted summary judgment for respondent homeowners. Claims against Carlson's business were dismissed because its exposure to liability had been extinguished by a settlement with respondents.

A prior insurer of Carlson was dismissed from the case when it settled with the homeowners. Grinnell appeals the summary judgment.

## FACTS

In 1977, respondents Lowell and Marjorie Wasmuth hired Edwin Carlson of Eddie's Insulation to install ureaformaldehyde insulation in their home. In 1978, the Wasmuths felt the insulation was not keeping their house as warm as it did in 1977, and in the fall they contacted Eddie's. Eddie's examined the house, determined the insulation had shrunk, and in November 1979 pumped in additional insulation.

Shortly after the 1979 reinsulation, Mrs. Wasmuth became aware of a smell in her home, her eyes burned, she had difficulty breathing, and suffered from nausea and sore throats. Mrs. Wasmuth testified that the onset of symptoms was gradual, beginning in the fall of 1979. The severity of the symptoms gradually increased.

In 1981, the Wasmuths obtained a testing report indicating there was an abnormally high level of formaldehyde in their home caused by deteriorating foam insulation. The deterioration was caused by im-

proper installation on both sides of the vapor barrier and in some places the vapor barrier was torn. The testing agency found the problem began in 1977 and would continue unless the insulation was removed.

The Wasmuths moved from their home in May 1981. They found it necessary to destroy many items of personal property which had absorbed the formaldehyde. Their claim that Carlson's company negligently installed the insulation was settled in January 1987.

## ISSUES

1. Does the pollution exclusion preclude coverage?

2. Do other policy exclusions preclude coverage for some property damage?

3. Are there other factual issues which preclude summary judgment?

## ANALYSIS

On appeal from summary judgment, this court must determine whether there are material fact issues or whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979).

The insurer has the burden of proving that a policy exclusion applies. *Henning Nelson Construction Co. v. Fireman's Fund American Life Insurance Co.*, 383 N.W.2d 645, 652 (Minn.1986). If there are ambiguities in the language of the policy, they must be construed in favor of the insured. *Id.* "If the language of the policy is reasonably subject to more than one interpretation, there is ambiguity." *Columbia Heights Motors, Inc. v. Allstate Insurance Co.*, 275 N.W.2d 32, 34 (Minn.1979). Whether the policy language is ambiguous is a question of law. *Id.*

### 1. Pollution Exclusion

Carlson's policy with Grinnell furnished liability coverage for unexpected bodily injury or property damage caused by an acci-

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

dent, "including continuous or repeated exposure to conditions."

Grinnell agrees that its policy covers a broad range of unexpected damages. Absent application of an exclusion, the insurer does not dispute that the emission of formaldehyde which caused physical and property damage would be covered.

One of the policy exclusions, known as the "pollution" exclusion states:

This insurance does not apply * * *

(f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water.

There is an exception to the exclusion when the "discharge, disposal, release or escape is sudden and accidental." Minnesota appellate courts have not considered this exclusion previously.

■ The intent of the exclusion clause was to deny coverage for polluting activities to those who knew or should have known their actions would cause harm. The insured should not be able to seek coverage for knowingly polluting the environment. *Broadwell Realty Services, Inc. v. Fidelity & Casualty Company of New York*, 218 N.J.Super. 516, 533, 528 A.2d 76, 85 (Ct.App.Div.1987).

We have reviewed prior appellate decisions involving construction of the pollution exclusion clause. Without exception, the cases which construe the pollution exclusion clause to preclude coverage involve (1) deliberate disposition of potentially hazardous waste or produced substances, (2) widespread pollution, (3) multiple claimants, (4) damaging actions over an extended period of time, usually in the regular course of business, and (5) discovery of the damage years after polluting conduct. *See International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co.*, 168 Ill. App.3d 361, 119 Ill.Dec. 96, 522 N.E.2d 758 (1988), *appeal denied*, 122 Ill.2d 576, 125 Ill.Dec. 218, 530 N.E.2d 246 (1988) (company, in the course of reconditioning barrels, dumped caustic chemicals which contam-

inated surface and ground water over period of time); *Borden, Inc. v. Affiliated FM Insurance Co.*, 682 F.Supp. 927 (S.D.Ohio 1987) (groundwater contamination due to regularly deposited radioactive wastes); *Claussen v. Aetna Casualty & Surety Co.*, 676 F.Supp. 1571 (S.D.Ga.1987) (gradual leaching of wastes from landfill into surrounding soil and groundwater); *American Motorists Insurance Co. v. General Host Corp.*, 667 F.Supp. 1423 (D.Kan.1987) (insured regularly dumped tons of salt brine over a period of at least 75 years); *Centennial Insurance Co. v. Lumbermens Mutual Casualty Co.*, 677 F.Supp. 342 (E.D.Pa.1987) (in the normal course of business, insured had a third party dump hazardous industrial waste); *American Mutual Liability Insurance Co. v. Neville Chemical Co.*, 650 F.Supp. 929 (W.D.Pa. 1987) (insured regularly dumped chemical pollutants and hazardous industrial waste material into unlined pit over a period of more than six years); *Fischer & Porter Co. v. Liberty Mutual Insurance Co.*, 656 F.Supp. 132 (E.D.Pa.1986) (insured regularly dumped toxic chemical for at least 30–40 years); *Techalloy Company, Inc. v. Reliance Insurance Co.*, 388 Pa.Super. 1, 487 A.2d 820 (1984), *appeal denied* (Pa. Oct. 31, 1985) (insured regularly dumped toxic "TCE" for over 25 years). *See also* Note, *The Pollution Exclusion Clause Through the Looking Glass*, 74 Geo.L.J. 1237, 1239, n. 11 (1986).

Few elements of the typical pollution claim are present in this case. Insulation was installed on only two occasions as part of an improvement to a family home. The damage was confined to a single family dwelling, and was discovered within a year of the second installation.

We have found no cases involving exclusion of coverage in a situation similar to this case. In those few cases involving small businesses with limited damage, the insured had coverage. *See, e.g., Farm Family Mutual Insurance Co. v. Bagley*, 64 A.D.2d 1014, 409 N.Y.S.2d 294 (1978) (chemicals sprayed on one field may have migrated to another); *Allstate Insurance Co. v. Klock Oil Co.*, 73 A.D.2d 486, 426

N.Y.S.2d 603 (1980) (gasoline storage tank leaked); *A–1 Sandblasting & Steamcleaning Co., Inc. v. Baiden,* 53 Or.App. 890, 632 P.2d 1377 (1981), *aff'd,* 293 Or. 17, 643 P.2d 1260 (1982) (overspray from painting bridge damaged passing cars).

■ Consistent with the rules of insurance policy construction protecting the insured, the reasonable expectation of the insured may be given effect in unique circumstances, even if careful examination of the policy provision would negate that expectation. *Atwater Creamery Co. v. Western National Mutual Insurance Co.,* 366 N.W.2d 271, 276–77 (Minn.1985) (citing Keeton, *Insurance Law Rights at Variance with Policy Provisions,* 83 Harv.L. Rev. 961, 967 (1970)).

The narrowly recognized doctrine of protecting the insured's reasonable expectations recognizes the:

1. unequal bargaining power between the parties;
2. the lay person's inability to read and understand an insurance policy;
3. the insured relies on the agent or company to provide the appropriate coverage.

*Atwater Creamery,* 366 N.W.2d at 277.

The reasonable-expectations doctrine gives the court a standard by which to construe insurance contracts without having to rely on arbitrary rules which do not reflect real-life situations and without having to bend and stretch those rules to do justice in individual cases. *Id.* at 278.

■ Considering the nature and purpose of the pollution exclusion, this is the unusual case requiring application of *Atwater.* The ordinary reader of the exclusion would reasonably conclude that it would not limit coverage for respondents' unexpected damage due to installation of building materials in a home, but would exclude pervasive environmental pollution problems such as hazardous waste dumping. The policy contains a pollution exclusion, not a delayed-action injury exclusion or an exclusion for all vapor cases. Carlson did not generate or produce a known hazardous substance, nor did he dispose of toxic waste as part of his business. *See Payne v. United States Fidelity & Guaranty Co.,* 625 F.Supp. 1189, 1192 (S.D.Fla.1985). Carlson purchased insurance to protect himself from damage resulting from the installation of insulation. Under the broad coverage afforded, he would reasonably expect coverage.

In determining the reasonable expectations of the insured, ambiguity of terms is a factor to be considered. *Atwater,* 366 N.W.2d at 278. While we find there is coverage in this case based on reasonable expectations and the purpose of the exclusion, we also find ambiguity.

■ Even where the pollution exclusion is otherwise applicable to an escape of a pollutant "into or upon land, the atmosphere or any water course or body of water," it does not apply if the discharge is "sudden and accidental." It is undisputed that damages alleged here were caused by an accident—an event, including continuous exposure, where Carlson neither intended nor expected to cause harm. The ambiguity lies with the word "sudden." Grinnell argues that "sudden" means "abrupt" or "quickly" and has a definite temporal aspect. *See Claussen v. Aetna Casualty & Surety Co.,* 676 F.Supp. at 1573. Especially when used in conjunction with "accidental," suddenness may be interpreted reasonably to include the unexpected release of formaldehyde into respondents' home, causing unanticipated damage.

Other courts have found the word "sudden" in the exclusion clause is ambiguous. It is reasonable to believe "sudden" means unexpected and/or unintended. *Pepper's Steel & Alloys v. United States Fidelity and Guaranty Co.,* 668 F.Supp. 1541, 1549 (S.D.Fla.1987). We observe that appellate courts are clearly divided on the meaning of the word sudden. *See New Castle County v. Hartford Accident and Indemnity Co.,* 673 F.Supp. 1359, 1363 (D.Del. 1987). This implies to some authorities the existence of ambiguity from the lay person's point of view.

The appellate decisions which find suddenness unambiguous and apply the exclu-

sion involve leaking or disposal of hazardous substances over a lengthy period of time. We find no cases involving injuries to a single household as a result of negligent installation of building material where the term sudden was found to be unambiguous.

Appellant claims an emerging nationwide consensus that the pollution exclusion is unambiguous. *Technicon Electronics Corp. v. American Home Assurance Co.,* App.Div., 533 N.Y.S.2d 91, 96 (1988). Once again, however, the case relied on by appellant involves continuous discharge of toxic chemicals for approximately six years as part of regular business practices. In that case the court held that the insured who intentionally discharged pollutants over an extended period of time was bound by the exclusion.

Even with a narrow view of suddenness, it is unreasonable to contend coverage is clearly limited to calamitous explosive events occurring a matter of moments after negligent conduct. Under the restrictive definition of suddenness, the pollution exclusion governs discharges over an extended period of time and sudden events are those occurring "over a short period of time." *Technicon Electronics Corp.,* 533 N.Y.S.2d at 99. Here, the insulation was negligently installed. The installation of foam on both sides of the vapor barrier and the tearing of the barrier caused immediate exposure to moisture which resulted in the deterioration and release of vapor. Respondents reported the effects of the formaldehyde shortly after the November 1979 reinsulation. *See Wagner v. Milwaukee Mutual Insurance Co.,* 145 Wis.2d 609, 427 N.W.2d 854 (Ct.App.1988) (gasoline began leaking immediately after pipe was damaged, but was not immediately discovered). Restriction of the suddenness exception to its unambiguous scope does not limit its application to the facts here.

The ambiguity inherent in "sudden" bolsters the lay person's reasonable expectation of coverage. From Carlson's viewpoint, and the victim's, the release of formaldehyde was certainly unexpected, and they could reasonably consider it sudden.

Respondents also contend that the exclusion's application to the discharge of pollutants "upon land, the atmosphere or any water course or body of water" is ambiguous with regard to whether the interior of the Wasmuth home is part of the "atmosphere." Because we find other ambiguity, and coverage based on reasonable expectations, we do not decide the merits of this contention.

### 2. Product quality exclusion

Grinnell argues that even if the pollution clause does not preclude coverage, other exclusions limit coverage for some of the property damage. The policy defines property damage as physical injury or destruction or loss of use of property.

The exclusions to property damage coverage are as follows:

This insurance does not apply * * *

(m) to loss of use of tangible property which has not been physically injured or destroyed resulting from

(1) a delay in or lack of performance by or on behalf of the named insured of any contract or agreement, or

(2) the failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured; but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the named insured's products or work performed by or on behalf of the named insured after such products or work have been put to use by any person or organization other than an insured;

(n) to property damage to the named insured's products arising out of such products or any part of such products;

(o) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.

A major portion of respondents' claim for $50,000 is for the loss of their house. At the advice of doctors, the Wasmuths moved from their home and built a new one. They have been unable to sell the old home.

The Wasmuths' home was uninhabitable because of formaldehyde. Grinnell argues this involves the loss of use of property because of the failure of the insured's products to meet the level of performance warranted or guaranteed by the insured.

Presumably, insulation is warranted to keep a house warm or warmer. The Wasmuths' home is not uninhabitable because it is too cold but because of the emission of formaldehyde. It is questionable whether this is a failure of the product which would bring it under exclusion (m) of the policy.

 However, whether or not the product failure language applies, once again, the exclusion has an exception stating it does not apply to loss of use caused by "sudden and accidental" physical injury or destruction of the insured's products. "Sudden and accidental" is ambiguous in the pollution clause, and it is also ambiguous in exclusion (m).

In addition, we note that the Wasmuths also suffered personal property damage and physical damages which would not be precluded by exclusion (m).

Exclusions (n) and (o), as indicated by the trial court, provide no coverage for damage to the work product or materials of the insured. Because respondents have made no claim for this type of coverage, the exclusions do not apply.

### 3. Other issues

Grinnell argues that summary judgment was improperly granted because all of its defenses were not considered. However, the additional defense claimed is that the Wasmuths have not shown that damages to their home fall under the definition of "property damage." It is evident this defense was considered in conjunction with determining whether exclusion (m) applied. The trial court clearly found that the presence of formaldehyde constituted injury or damage for coverage purposes. We agree.

### DECISION

Considering the purpose of the pollution exclusion, and based on the reasonable expectation of the insured and the ambiguity of the term "sudden," we find the pollution exclusion does not apply to the facts of this case. Ambiguity also precludes application of exclusion (m) of the policy.

AFFIRMED.

FORSBERG, Judge (concurring specially):

I concur. I agree that this case is governed by the reasonable expectations doctrine. *See Atwater Creamery Co. v. Western National Mutual Insurance Co.*, 366 N.W.2d 271 (Minn.1985). I do not agree that the insurance clause was ambiguous nor that the occurrence was "sudden."