**BUREAU OF ENGRAVING, Plaintiff,**

v.

**FEDERAL INSURANCE COMPANY, Defendant.**

**Civ. Nos. 3–89–517 and 3–90–673.**

United States District Court,
D. Minnesota,
Third Division.

June 3, 1992.

David M. Coyne, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, Minn., for plaintiff.

Bonita Jean Girard, and John Marvin Anderson, Bassford, Heckt, Lockhart, Truesdell & Briggs, Minneapolis, Minn., for defendant.

## MEMORANDUM AND ORDER

MAGNUSON, District Judge.

## I. INTRODUCTION

This matter is before the court upon Federal Insurance Company's motion for summary judgment (Docket No. 27 in Civil File No. 3–89–517; Docket No. 18 in Civil File No. 3–90–673), the Bureau of Engraving, Inc.'s motion for summary judgment (Docket No. 15 in Civil File No. 3–89–517; Docket No. 22 in Civil File No. 3–90–673), and upon the Bureau's motion for certification of an issue to the Minnesota Supreme Court (Docket No. 32 in Civil File 3–89–517; Docket No. 29 in Civil File No. 3–90–673). For the following reasons, the court grants Federal's motion for summary judgment and denies the Bureau's motions for certification and summary judgment.

## II. FACTS

In these consolidated actions, the Bureau seeks a determination of insurance coverage for expenses incurred as a result of pollution at seven different sites in Minnesota. Federal insured the Bureau under a series of comprehensive commercial general liability policies beginning in 1973. The policies provide that:

> The company will pay on behalf of the insured all sums which the insured shall become obligated to pay as damages by reason of liability to which this insurance applies ... for bodily injury, property damage, or personal injury caused by an occurrence.

The policies define "occurrence" as "an event, including continuous or repeated exposure to conditions, which results in bodily injury, property damage, personal injury...." The policies also contain a pollution exclusion. The policies in effect prior to April 1, 1986, have a "sudden and accidental" exception to the exclusion. The policies in effect after April 1, 1986, contain an absolute pollution exclusion.

Civil File No. 3–89–517 involves five sites in Isanti County. In the 1980's, the Envi-

ronmental Protection Agency conducted an investigation of these five sites. The EPA discovered many barrels of hazardous wastes, some of which were buried, some of which were leaking or had leaked, and contaminated soil and ground water. The contamination was caused by leaks from barrels, some of which had been buried in 1970, which were discovered in 1980.

The EPA sued entities whose waste materials had been disposed of at the Isanti County sites. Although the EPA did not sue the Bureau of Engraving, one of the defendants commenced a third-party action against it, alleging that some of the Bureau's waste materials, specifically barrels of used trichloroethylene, had been disposed of at the Isanti County sites. The Bureau denied these allegations, but paid $45,000 in settlement of the claims against it in connection with the Isanti sites. The Bureau now seeks to recover that amount from Federal Insurance Company.

Civil File No. 3–90–673 involves two sites which were formerly operated by Ecolotech, one in St. Paul and one in Minneapolis. From 1974 to 1978, the Bureau contracted with Ecolotech to take toxic waste etchants generated by the Bureau of Engraving in the process of manufacturing printed circuit boards.

In 1979, the Minnesota Pollution Control Agency began an investigation of the Ecolotech facilities. The MPCA observed leakages of liquid waste and many waste containers in a deteriorated condition. The MPCA found both soil and ground water contamination. The MPCA determined that the barrels of liquid waste had been accumulated at the St. Paul site from 1973 to 1984, and at the Minneapolis site from 1979 to 1984.

The MPCA demanded that Ecolotech, its owner, and companies that provided hazardous substances to it, including the Bureau, conduct an investigation and remediation of hazardous waste contamination at the sites. The Bureau has expended $442,-105.63 conducting an investigation of the contamination at the facilities, removing and properly disposing of stored waste, and performing hazardous waste remediations

at the facilities. The Bureau seeks to recover this amount from Federal.

## III.  DISCUSSION

A court shall render summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c) (1987).

### A.  POST–1986 POLLUTION EXCLUSION

■ The policies in effect after 1986 contain an absolute pollution exclusion. They exclude:

Property damage arising out of the actual, alleged, or threatened discharge, disbursal, release, or escape of pollutants:

\*  \*  \*  \*  \*  \*

b.  At or from any site or location used at any time by or for you or by others for the handling, storage, disposal, processing or treatment of waste;

c.  Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for you or any person or organization for which you may be legally responsible;  or

d.  At or from any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf or performing operations:

(i) If the pollutants are brought on or to the site or location in connection with such operation;  or

(ii) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

\*  \*  \*  \*  \*  \*

2.  Any loss, cost, or expense arising out of any request, demand or order issued or made pursuant to any environmental liability laws that you or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize pollutants.

Pollutants means one or more solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials

to be recycled, reconditioned or reclaimed.

The Minnesota Court of Appeals has held that this exclusion is clear and unambiguous and that it precludes coverage for damage caused by the emission of a pollutant. *League of Minnesota Cities Ins. Co. v. Coon Rapids*, 446 N.W.2d 419, 422 (Minn.Ct.App.1989). The post–1986 damages the Bureau seeks to recover from Federal are excluded under this absolute pollution exclusion.

## B. PRE–1986 POLLUTION EXCLUSION

■ The policies in effect before 1986 contain a pollution exclusion with an exception if the discharge is "sudden and accidental." They exclude:

> bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acid, alkalies, toxic chemicals, liquids or gasses, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere, or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

The Bureau contends that issues of fact exist as to whether the substances it disposed of were hazardous. It argues that it did not think that its waste materials were dangerous. It further argues that government regulations had not identified the substances that it disposed of as hazardous at the time when the Bureau disposed of them.

The exclusion does not require, however, that the Bureau know that the substances are hazardous. Furthermore, it does not require that the government identify the substances as hazardous. The EPA found that the property damage at the Isanti and Ecolotech sites were caused by leakage of contaminants from barrels. The damages for which the Bureau became liable for property damage at the Isanti and Ecolotech sites arose, therefore, out of the release or discharge of contaminants. The pollution exclusion applies to these cases.

The Bureau further contends that the "sudden and accidental" exception to the pollution exclusion does not apply because the policy language is ambiguous. The Bureau argues that "sudden" could reasonably mean "unexpected." If there are ambiguities in the language of the policy, they must be construed in favor of the insured. *Grinnell Mut. Reinsurance Co. v. Wasmuth*, 432 N.W.2d 495, 497 (Minn. App.1988). Whether policy language is ambiguous is a question of law. *Id.*

The Bureau argues that the policy language is ambiguous because the policy does not define "sudden" or "accidental," and the dictionary provides two reasonable definitions for the word "sudden." The Bureau adds that other insurance policies define "sudden" as "unexpected." Additionally, it claims that members of the insurance industry have made pronouncements that "sudden" means "unexpected." Lastly, the Bureau notes that courts are split as to the meaning of the exclusion.

In *Sylvester Bros. Dev. v. Great Cent. Ins.*, 480 N.W.2d 368, 373 (Minn.App.1992), the Minnesota Court of Appeals addressed many of these arguments and found that the "sudden and accidental" language in the pollution exclusion was not ambiguous and carried a temporal connotation of "abruptness." *Id.* at 375. The *Sylvester Bros.* court held that the existence of multiple dictionary definitions does not prove a word in an insurance policy is ambiguous. *Id.* If this were the case, it would be impossible to draft an unambiguous policy without defining almost every word. The *Sylvester Bros.* court noted that the word "sudden" must be construed in the context of the policy language. *Id.* The *Sylvester Bros.* court concluded that the use of "and" between "sudden" and "accidental" indicates that the drafters intended two separate requirements. Since "accidental" would require that the discharge was "unexpected," "sudden" must require that the discharge occurred relatively quickly rather than over a long period of time. *Id.*

This court adopts the reasoning of the *Sylvester Bros.* court and finds that the "sudden and accidental" language is not

ambiguous and that "sudden" requires that the discharge occurred quickly or abruptly. Definitions in other insurance policies and pronouncements in other states by other members of the insurance industry are not relevant to otherwise unambiguous policy language.

The Bureau cites the *Grinnell* case, in which another panel of the Minnesota Court of Appeals held that the pollution exclusion was ambiguous and did not apply. 432 N.W.2d at 499. The *Sylvester* court stated, however, that it based its holding in the *Grinnell* case on the reasonable expectations doctrine. 480 N.W.2d at 376. It further stated that in *Grinnell* it had based its holding upon the unique facts in that case. *Id.* The *Grinnell* court distinguished its claim of illness resulting from emission of formaldehyde from insulation in a home from "typical" pollution cases. 432 N.W.2d at 500.

The *Grinnell* court identified five factors of a "typical" pollution case:

(1) deliberate disposition of potentially hazardous waste or produced substances;
(2) widespread pollution;
(3) multiple claimants;
(4) damaging action over an extended period of time, usually in the regular course of business; and
(5) discovery of the damage years after polluting conduct.

*Id.* at 498. The absence of one or more of these factors of a "typical" pollution case does not mean that the pollution exclusion does not apply to that particular case. The case presently before the court has most of these factors. The damage was discovered years after the polluting conduct. The damaging action occurred over a long period of time and in the regular course of business. There were many parties found liable for the damage at both the Isanti and Ecolotech sites. The pollution was widespread. The damages arose from the disposition of potentially hazardous or produced substances.

■ The Bureau argues that the pollution exclusion should not apply because the Bureau did not deliberately dispose of its waste at the Isanti or Ecolotech sites. However, the *Grinnell* court cites with approval *Centennial Insurance Co. v. Lumbermens Mutual Casualty Co.,* 677 F.Supp. 342 (E.D.Pa.1987). *Id.* In *Centennial,* the insured arranged for a third party to dispose of its waste. Unknown to the insured, the third party illegally disposed of the waste causing contamination. The court held that the pollution exclusion applied. *Centennial,* 677 F.Supp. at 349. The *Centennial* court stated that although the damages may have been accidental from the insured's perspective, it could not have been sudden due to its continuous nature. *Id.* The court further stated:

This interpretation prevents companies, whose wastes are regularly disposed of improperly, from hiding behind their ignorance and seeking insurance for damages caused by pollution that occurs in the regular course of business. Companies should avoid improper toxic waste disposal rather than blindly accept it as a cost of business.

*Id.* Although the Bureau may not be guilty of hiding behind its ignorance in this case, deliberate disposition of hazardous substances by the insured does not have to occur before the pollution exclusion applies.

■ The Bureau alternatively argues that the discharge did occur suddenly. The Bureau does not produce any evidence, however, that would suggest that the discharge occurred suddenly. The evidence shows, instead, that the barrels at both the Isanti site and the Ecolotech site had been leaking for almost ten years. A reasonable jury could not find that the discharge was sudden. No genuine issue of fact remains for trial as to whether the discharge at the Isanti site or the Ecolotech site was sudden.

■ Lastly, the Bureau argues that the reasonable expectations doctrine precludes application of the pollution exclusion. Where policy language is unambiguous and there is no showing of a hidden exclusion or other special circumstances, the reasonable expectations doctrine does not apply. *Levin v. Aetna Casualty and Surety Company,* 465 N.W.2d 99, 102 (Minn.App.

1991). As previously discussed, the policy language is not ambiguous and, therefore, no hidden exclusions exist. Furthermore, there are no special circumstances in this case, as there were in the *Grinnell* case.

In *Grinnell*, the court noted that,

the reasonable expectations doctrine gives the court a standard by which to construe insurance contracts ... without having to bend and stretch rules to do justice in individual cases.

432 N.W.2d at 499. This case falls within the pollution exclusion. It has many of the factors of a "typical" pollution case. Insurance companies should be able to exclude certain damages from coverage and not be required to cover damages explicitly excluded by clear and unambiguous policy language. The court finds no reason to resort to the reasonable expectations doctrine to do justice in this case.

Accordingly, IT IS ORDERED that:

Federal Insurance Company's motion for summary judgment (Docket No. 27 in Civil File No. 3–89–517; Docket No. 18 in Civil File No. 3–90–673) is GRANTED. The Bureau of Engraving's motion for summary judgment (Docket No. 15 in Civil File No. 3–89–517; Docket No. 22 in Civil File No. 3–90–673) is DENIED. The Bureau of Engraving's motion to certify an issue to the Supreme Court of Minnesota (Docket No. 32 in Civil File 3–89–517; Docket No. 29 in Civil File No. 3–90–673) is DENIED. The action is DISMISSED.

LET JUDGMENT BE ENTERED ACCORDINGLY.