SYLVESTER BROTHERS DEVELOP-
MENT COMPANY, d/b/a East Be-
thel Landfill, Appellant,

v.

GREAT CENTRAL INSURANCE
COMPANY, et al.,
Defendants,

The Federated Mutual Insurance
Company, Respondent,

Commercial Union Insurance Company,
et al., Respondents,

Auto–Owners Insurance Company,
Respondent,

Interstate Fire & Casualty
Company, Respondent.

No. CX–92–2490.

Court of Appeals of Minnesota.

July 20, 1993.

Review Denied Sept. 30, 1993.

Forrest D. Nowlin, Gary Hansen, Timothy J. Dolan, Doherty, Rumble & Butler, Minneapolis, for Sylvester Bros. Development Co. d/b/a East Bethel Landfill.

James A. Jardine, John O'Brien, Jardine, Logan & O'Brien, St. Paul, for The Federated Mut. Ins. Co.

John M. Anderson, Charles E. Lundberg, Bassford, Heckt, Lockhart, Truesdell & Briggs, P.A., Minneapolis, for Commercial Union Insurance Co., et al.

James A. Reding, Sylvia Ivey Zinn, Reding & Votel, St. Paul, for Auto–Owners Ins. Co.

Dale O. Thornsjo, Peterson & Hektner, Ltd., Minneapolis, for Interstate Fire & Cas. Co.

Michael Berens, Kelly & Berens, P.A., Minneapolis, for amicus curiae Ins. Environmental Litigation Ass'n.

Considered and decided by SHORT, P.J., SCHUMACHER and KLAPHAKE, JJ.

## OPINION

SHORT, Judge.

This declaratory judgment action involving the question of insurance coverage for groundwater contamination caused by the leaching of pollutants from a landfill is before us for the second time. Initially, the trial court granted summary judgment for the insurers because it concluded contamination by the routine deposit of waste into a landfill was not "sudden and accidental." We reversed, remanded, and ruled the proper inquiry must be whether the escape of pollutants from the landfill into the surrounding groundwater, rather than their routine deposit, was "sudden and accidental." *Sylvester Bros. Dev. Co. v. Great Cent. Ins. Co.*, 480 N.W.2d 368, 374 (Minn. App.1992), *pet. for rev. denied* (Minn. Mar. 26, 1992) (*Sylvester I*). On remand, the trial court determined the release of contaminants constituted seepage which was not sudden, and granted summary judgment for the insurers. On appeal, Sylvester Brothers Development Company (operator) argues: (1) our holding in *Sylvester I* precludes the trial court from granting summary judgment; and (2) a jury should decide the question of whether the escape of contaminants was sudden and accidental. We affirm.

## FACTS

The facts are set out in *Sylvester I* and are only briefly restated here. In 1969, the operator established an open dump at the East Bethel landfill site in Anoka County. At that time, the operator believed the soil underlying a dump or landfill would act as a filter to prevent pollutants from migrating into and contaminating the groundwater. The landfill, as an open dump, received film and photo processing chemicals, oil filters containing waste oil, asphalt and solvents, paint, ink, liquid ether, foundry slag, asphalt tar, roofing materials, waste ash, kerosene, oil-soaked rags, cleaning solvents and dry cleaning solvents.

In 1970 and 1971, because of the potential for causing groundwater problems, both the Minnesota Pollution Control Agency (MPCA) and Anoka County adopted regulations prohibiting the acceptance of toxic and hazardous waste by landfills. Following promulgation of these regulations, the operator ran the East Bethel site as one of the state's first sanitary landfills. In 1974, East Bethel became a "modified sanitary" landfill, accepting only demolition fill, certain waste generated by companies involved in the construction industry and municipal solid waste brought by individuals living in the area. The landfill continues to

operate as a modified sanitary/demolition landfill today.

In 1980, Anoka County hired an engineering firm to evaluate data collected from the testing of groundwater at four of the county's landfill sites. By 1984, that firm had concluded there was extensive groundwater contamination at East Bethel. The MPCA notified the operator it was considered a potentially responsible party for studying and remediating the groundwater contamination. In 1985, the operator and the MPCA entered into a consent decree which made the operator responsible for all costs involved in the investigation and cleanup of groundwater contamination at East Bethel. The operator seeks to recover all of these costs from its insurers.

The trial court granted the first summary judgment motion for the insurers on the basis that groundwater contamination by the operator's routine deposit of waste into the landfill was not sudden and accidental. We reversed on that issue, explaining that the language of the policies' pollution exclusion requires the focus to be on the escape of the pollutants from the landfill into the surrounding groundwater, rather than on the deposit of waste into the landfill. *Sylvester I*, 480 N.W.2d at 374. On remand, the trial court determined that although there were numerous releases from the landfill which were themselves sudden and accidental, these releases as a whole constituted seepage into the groundwater which was not sudden.

## ISSUES

I. Does the doctrine of law of the case bar summary judgment?

II. Are there material facts in dispute which prevent summary judgment?

## ANALYSIS

■ On appeal from a grant of summary judgment, we determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). We do not defer to the trial court's application of the law. *See Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984) (appellate court need not give deference to a trial court's determination of a legal issue). We view the evidence in the light most favorable to the operator. *Abdallah, Inc. v. Martin*, 242 Minn. 416, 424, 65 N.W.2d 641, 646 (1954). The interpretation and construction of an insurance policy is a matter of law which the trial court properly can determine on summary judgment, and which we review de novo. *Iowa Kemper Ins. Co. v. Stone*, 269 N.W.2d 885, 887 (Minn.1978).

### I.

■ The doctrine of "law of the case" is based on a policy requiring issues once fully litigated to be set at rest. *Lange v. Nelson–Ryan Flight Serv., Inc.*, 263 Minn. 152, 156, 116 N.W.2d 266, 269 (1962), *cert. denied*, 371 U.S. 953, 83 S.Ct. 508, 9 L.Ed.2d 500 (1963). It applies when an appellate court has ruled on a legal issue and remanded the case for further proceedings on other matters. The issue decided becomes the "law of the case" and may not be relitigated in the trial court or re-examined in a second appeal. *Sigurdson v. Isanti County*, 448 N.W.2d 62, 66 (Minn. 1989); *Mattson v. Underwriters at Lloyds of London*, 414 N.W.2d 717, 719–20 (Minn. 1987); *Nees v. Minneapolis St. Ry.*, 221 Minn. 396, 397, 22 N.W.2d 164, 164 (1946). However, issues not determined in the first appeal may, on remand, be litigated. *Mattson*, 414 N.W.2d at 720; *see also Sigurdson*, 448 N.W.2d at 66 (doctrine of law of the case does not reach issues which were not litigated); *Cayse v. Foley Bros., Inc.*, 260 Minn. 248, 253, 110 N.W.2d 201, 205 (1961) (questions not decided may be considered on a second appeal).

■ The operator is correct that the issues decided in *Sylvester Bros. Dev. Co. v. Great Cent. Ins. Co.*, 480 N.W.2d 368 (Minn.App.1992), *pet. for rev. denied* (Minn. Mar. 26, 1992) (*Sylvester I*) may not be relitigated in the trial court or re-examined in a second appeal. *Sylvester I*'s conclusion that the triggering event was the

release of contaminants from the East Bethel landfill into the groundwater constitutes the law of the case. However, the operator further argues our opinion in *Sylvester I* bars a grant of summary judgment. We disagree. Neither the trial court nor this court had before it the issue of whether the discharge of contaminants from a landfill was sudden and accidental. The trial court on remand, based on evidence from the operator, found multiple discharges represented an ongoing pattern of contamination that did not as a matter of law fall within the exception to the policies' pollution exclusion clause. Because this precise issue was not before the trial court on the insurers' first motion for summary judgment, *Sylvester I* does not prevent the trial court on remand from granting summary judgment based on this ground. *See, e.g., Cayse*, 260 Minn. at 256, 110 N.W.2d at 206 (decision on first appeal that party was not entitled to judgment notwithstanding the verdict did not preclude appellate court from ordering such a judgment for the party on second appeal where different theory of recovery is pursued at second trial). Assuming no material facts are in dispute, the trial court could grant summary judgment in the insurers' favor.

## II.

Summary judgment is appropriate when there are no issues of material fact and where determination of the applicable law will resolve the controversy. Minn. R.Civ.P. 56.03; *North Cent. Pub. Serv. Co. v. Village of Circle Pines*, 302 Minn. 53, 56–57, 224 N.W.2d 741, 744 (1974). For purposes of Rule 56, a "material fact" is one of such a nature as will affect the result or outcome of the case depending upon its resolution. *Rathbun v. W.T. Grant Co.*, 300 Minn. 223, 229, 219 N.W.2d 641, 646 (1974). Facts, inferences, and conclusions that reasonably may be drawn by a jury from the evidence are fact issues which may not be resolved by the trial court on a motion for summary judgment. *Illinois Farmers Ins. Co. v. Tapemark Co.*, 273 N.W.2d 630, 633 (Minn.1978); *Rathbun*, 300 Minn. at 230, 219 N.W.2d at

646; *Hamilton v. Independent Sch. Dist. No. 114*, 355 N.W.2d 182, 184 (Minn.App. 1984). On review, we must take a view of the evidence most favorable to the party against whom summary judgment was granted. *Abdallah, Inc.*, 242 Minn. at 424, 65 N.W.2d at 646.

■ The operator argues the issue of whether the contamination was sudden and accidental is a jury question. We disagree. The policies' pollution exclusion clause and its exception read as follows:

> This policy does not apply to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants, or pollutants into or upon the land, the atmosphere or any water course or body of water. This exclusion does not apply if the discharge, dispersal, release or escape referred to in the exclusion is sudden and accidental.

Viewing the evidence in the light most favorable to the operator, the record indicates that the operator's expert witnesses testified at deposition and in affidavit: (a) there were multiple discharges occurring over a period of years or decades; (b) the escapes were not continuous; and (c) each separate discharge was sudden and accidental. The trial court concluded, based on this evidence, that the seepage leading to the groundwater pollution and necessitating the cleanup was not "sudden and accidental," and so granted summary judgment in the insurers' favor.

"Sudden" in the pollution exclusion exception carries the temporal connotation of "abruptness" and means the incident at issue occurred relatively quickly rather than gradually over a long period of time. *Sylvester I*, 480 N.W.2d at 375. The operator's expert witnesses acknowledge the leaking of contaminants into the groundwater has been occurring for over 20 years and is continuing, despite the fact that hazardous materials have not been deposited at the landfill since the early 1970's. One of the operator's expert witnesses stated:

[T]he sudden introductions to the ground water because of disposal actions stopped [after 1976, and] there was a continuing introduction of contamination to the ground water from the material that had been previously disposed of, but that I would no longer consider that sudden relative to the disposal event. * * * [The] release from the landfill to the ground water * * * is an ongoing activity.

This statement illustrates the long-term and ongoing nature of the releases and does not describe an abrupt occurrence. In light of this expert testimony, the pollution of the groundwater taking place over two decades cannot reasonably be considered "sudden." *See, e.g., A. Johnson & Co. v. Aetna Casualty & Sur. Co.*, 933 F.2d 66, 75 (1st Cir.1991) (where variety of disposal methods contributed to contamination in a course of conduct over a long period of time, mere speculation that any individual instance of disposal occurred suddenly cannot contradict reasonable interpretation that entire pattern of conduct was not sudden and accidental); *Bureau of Engraving v. Federal Ins. Co.*, 793 F.Supp. 209, 213 (D.Minn.1992) (there was no genuine issue of fact regarding whether discharge was sudden where the evidence showed barrels had been leaking hazardous wastes for nearly ten years); *Liberty Mut. Ins. Co. v. SCA Servs., Inc.*, 412 Mass. 330, 588 N.E.2d 1346, 1350 (1992) (rejecting "strained interpretation" that discharges were sudden where contamination occurred over a protracted period of time as a concomitant part of a regular business activity); *Borg–Warner Corp. v. Insurance Co. of N. Am.*, 174 A.D.2d 24, 577 N.Y.S.2d 953, 957 (1992) (discharges occurring over long periods of time "do not even remotely qualify as sudden" for purposes of exception to pollution exclusion); *Techalloy Co. v. Reliance Ins. Co.*, 338 Pa.Super. 1, 487 A.2d 820, 827 (1984) (contamination occurring on regular basis from time to time over a period of 25 years "negate[s] any potential for finding a sudden event" for purposes of pollution exclusion exception); *cf. Gridley Assocs., Ltd. v. Transamerica Ins. Co.*, 828 P.2d 524, 528 (Utah App.1992)

(discharge "sudden" where damage to gas line caused immediate spill into ground that remained undiscovered for several months).

The operator urges us to look at each individual release, rather than the releases' total effect, in deciding whether the groundwater contamination was sudden. We decline to do so because under that theory all releases would be sudden. "[O]ne can always isolate a specific moment at which pollution actually enters the environment." *Ray Indus., Inc. v. Liberty Mut. Ins. Co.*, 974 F.2d 754, 768 (6th Cir. 1992). Under the operator's suggested approach, the "sudden and accidental" exception essentially would swallow the "rule" of the pollution exclusion clause that pollution is not covered. Moreover, the operator's experts themselves characterize the release of contaminants as an ongoing series of events by stating that "it seems highly unlikely, and nearly impossible, that a single disposal event created the pattern of contamination" and that the contamination "resulted from a series of disposal events."

In viewing the facts, we do not focus on the loss suffered; that is, the damage to the groundwater. *See* E. Joshua Rosenkranz, Note, *The Pollution Exclusion Clause Through the Looking Glass*, 74 Geo.L.J. 1237, 1252–53, 1268 (1986) (effect of insurance industry's adding pollution exclusion to occurrence-based policies was to shift focus of inquiry from the loss to the discharge that leads to the loss). Rather, we focus on the discharge of the contaminants into the groundwater and ask whether that discharge was "sudden" within the meaning of the policies' pollution exclusion exception. Although the operator tries to characterize this case as exceptional, the reality is that this case represents a "typical" pollution claim. *See Grinnell Mut. Reins. Co. v. Wasmuth*, 432 N.W.2d 495, 498 (Minn.App.1988) (without exception, the cases which construe the pollution exclusion clause to preclude coverage involve: (1) deliberate disposition of potentially hazardous waste or produced substances; (2) widespread pollution; (3) multiple claimants; (4) damaging actions over an extend-

ed period of time, usually in the regular course of business; and (5) discovery of the damage years after the polluting conduct), *pet. for rev. denied* (Minn. Feb. 10, 1989).[1] In such situations, a pollution exclusion clause like that contained in the insurers' policies applies, and the policies do not provide coverage. *See generally Iowa Kemper Ins. Co.*, 269 N.W.2d at 887 (the interpretation of the language of an insurance contract is a question of law).

The operator also argues there are material facts in dispute regarding the similarity of the releases of contaminants into the groundwater, the proximity of the releases in time and space, the number of releases, and the mechanism of the releases. These facts, while disputed, are not material to the issue of whether the contamination was sudden and accidental because the contamination has been an ongoing process. The pollution exclusion exception, by its plain terms, does not require that the pollution be from the same type of waste and by the same mechanism but merely that it be "sudden and accidental." Because the discharge of contaminants into the groundwater was not sudden, the exclusion applies and the answers to those unresolved questions will not affect this case's result or outcome. *See Rathbun*, 300 Minn. at 229, 219 N.W.2d at 646 (defining material facts).

In addition, these unresolved facts emphasize the degree of speculation that would be required under the operator's suggested approach were a jury to consider each and every release from the landfill into the groundwater in an effort to determine whether any particular release was sudden. The operator's owner testified that for several years the operator accepted "anything and everything" and did not prepare any reports regarding the amount and type of waste, how it was contained, or where it was dumped. One of the operator's experts testified he was "not aware of a way" to determine the specific timing of each release. The other expert stated it is "normally possible * * * to make an estimate" of the timing of the discharge. He also testified, however, that the contamination that continues to this day is being caused by materials that have been sitting in the landfill for twenty-four years. In light of these facts, it would be impossible for a jury to determine on a release-by-release basis what part of the discharge, if any, was sudden and accidental. There is no reason to engage in a release-by-release "microanalysis" of whether each release was sudden when there has been a continuous pattern of pollution. *Lumbermens Mut. Casualty Co. v. Belleville Indus.*, 938 F.2d 1423, 1428 (1st Cir.1991), *cert. denied*, ⸺ U.S. ⸺, 112 S.Ct. 969, 117 L.Ed.2d 134 (1992). Further, such an analysis would be contrary to the insurance policies' explicit language, which specifically excludes pollution coverage and allows only a narrow exception for "sudden and accidental" events. *See* Rosenkranz, *supra*, at 1251 (by adding the pollution exclusion clause, insurers intended to cut back coverage from the broader definition of occurrence to cover only damage that did not arise continuously from the insured's normal business operations). Under these facts, the policies' pollution exclusion clause precludes insurance coverage for the contamination of the groundwater because the seepage does not fall within the "sudden and accidental" exception. The trial court, therefore, did not err in granting the insurers' motion for summary judgment.

## DECISION

The law of the case doctrine does not prevent the trial court's grant of summary judgment on remand because its basis for granting summary judgment on remand was not an issue that previously was raised and decided. In addition, the trial court's grant of summary judgment was proper

---

1. We are deciding this case only on the basis that the seepage was not "sudden" for purposes of the policies' pollution exclusion exception. We do not decide whether the release of the contaminants from the landfill to the groundwater was "accidental." *See* Rosenkranz, *supra,* at

1268 (discussing cases disposed of upon determination that discharge was not sudden); *see also Bureau of Engraving*, 793 F.Supp. at 213 (absence of one or more of the factors listed in *Grinnell* does not mean that the pollution exclusion is inapplicable).

because there are no issues of material fact concerning whether the release of contaminants from the landfill to the groundwater was sudden where pollutants have been escaping from the landfill for over twenty years and continue to do so. Because the policies' pollution exclusion clause explicitly precludes coverage in such circumstances, we affirm the trial court's grant of summary judgment in the insurers' favor.

**Affirmed.**

SCHUMACHER, Judge (dissenting).

I respectfully dissent. We previously held that there are material facts in this case that preclude summary judgment. *See Sylvester Bros. Dev. Co. v. Great Cent. Ins. Co.*, 480 N.W.2d 368, 377 (Minn. App.1992) ("[W]e find numerous issues of material fact concerning * * * whether the release was sudden and accidental."), *pet. for rev. denied* (Minn. Mar. 26, 1992). I find nothing in the record that supports a change in this position.

The majority holds that it would be unduly speculative to independently consider whether each release was sudden. In our prior holding, we expressly instructed the district court to undertake this task. *See id.* at 374 (If court finds multiple discharges or releases, "the trial court will have to determine whether all, some, or none of these discharges or releases were sudden and accidental."). This language clearly defines the scope of the finality of our decision and thus became the law of the case. *See Mattson v. Underwriters at Lloyds of London*, 414 N.W.2d 717, 720 (Minn.1987) (law of the case "determined by what the court's decision says").

The majority concludes that "microanalysis" of each individual release is an impossible task. Resolution of that issue depends on facts that were not before the district court and are not before this court on appeal. In any event, the district court did not find it an impossible task. Rather, the court explicitly found that for purposes of summary judgment, the discharges were both discrete and "sudden and accidental." Since these are exactly the types of discharges that are excepted from the pollu-

tion exclusion, the district court should have accordingly denied summary judgment without going any further. Instead, the district court went on to find that, as a matter of law, the discharges were seepage and that seepage cannot be sudden and accidental.

This is erroneous for two reasons. First, simply redefining "discharges" as "seepage" does not change the manner in which the contamination occurred. Sudden and accidental discharges are not excluded from coverage, regardless of what they are called. Second, this again conflicts with our earlier decision. *See Sylvester Bros.*, 480 N.W.2d at 376 (While difficult to imagine that seepage was sudden, "it is not our role to decide disputed facts."). Those facts are still in dispute. Our holding established that "sudden" means "the incident at issue occurs relatively quickly rather than gradually over a long period of time." *Id.* at 375. The holding also made clear that the incident at issue in this case is the release of the contaminants from the landfill. *Id.* at 373–74. The operator has provided an expert's affidavit that describes several ways the release of contaminants from the landfill could occur relatively quickly, in other words, ways in which the "incident" may have been "sudden." This affidavit raises questions of material fact. Under Minn.R.Civ.P. 56.03, summary judgment is inappropriate.

I would remand for trial.